UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONALD W. HODGES,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 12-1675 (JDB)

## MEMORANDUM OPINION

Plaintiff Ronald Hodges brings this action against defendant the District of Columbia, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., as amended, the District of Columbia Human Rights Act of 1977 ("DCHRA"), D.C. Code §§ 2-1401 et seq., as amended, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq.[1] Now before the Court is the District's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment. For the reasons set forth below, the District's motion will be granted in part and denied in part.

---

[1] Although the caption of Hodges's complaint lists only the District of Columbia as a defendant, the complaint's text refers to the District of Columbia Office of the Inspector General ("OIG") and Charles Willoughby, the Inspector General, as defendants as well. See Compl. [Docket Entry 1-1] ¶¶ 2, 6-7 (Oct. 11, 2012). Upon challenge by the District that neither OIG nor Willoughby is subject to suit, see Def.'s Mot. to Dismiss [Docket Entry 5] at 6-7 (Nov. 30, 2012) ("Def.'s Mot."), Hodges "concedes and stipulates to the dismissal of all claims against the Office of the Inspector General or Charles Willoughby in his official or individual capacity," see Pl.'s Opp'n to Def.'s Mot. [Docket Entry 10] at 4 n.1 (Feb. 19, 2013) ("Pl.'s Opp'n").

## FACTS

For purposes of the District's motion, the allegations of Hodges's complaint are accepted as true. Hodges was hired as a Supervisory Auditor in the District of Columbia Office of the Inspector General in August 2008. See Compl. ¶ 9. He claims to have had the requisite skill, education, and experience for the position at all times relevant to this action. See id. ¶ 10.

In early 2010, Hodges began experiencing "significant lumbar pain." See id. ¶ 11. On June 8, 2010, an MRI revealed that he had "a disc herniation, a disc osteophyte with facet degenerative changes, and a lumbar disc bulge." Id. ¶ 12. Hodges alleges that these physical impairments limited his ability to sit, work, sleep, walk, and concentrate. See id. ¶¶ 42, 53. He began treatment for the condition on July 22, with his doctor requiring a complete work restriction until July 27. Id. ¶ 13. Hodges alleges that he "experienced constant pain" and that his physician "advised additional medical care to treat the condition." See id. ¶ 15.

On July 30, Hodges informed Ronald King, the Assistant Inspector General for Audits, that he would need to undergo continued treatment and would be unable to work. See id. ¶ 17. Hodges requested leave without pay and short term disability. Id. ¶ 16. In an August 6 letter, King acknowledged receipt of Hodges's notice and requested that Hodges have his doctor complete a Medical Certification by Health Care Provider form. See id. ¶ 19.

Hodges's chiropractor, Dr. Nguyen, completed the medical certification form, which Hodges submitted on August 13. See id. ¶ 20. Dr. Nguyen described Hodges's condition as a lumbar disc bulge, decreased range of motion, muscle spasms, and sciatica

radiculopathy. Id. ¶ 21. Dr. Nguyen stated that Hodges's condition would last three to six months and that Hodges would experience a six- to eight-week "incapacity duration" beginning July 22, 2010. See id. ¶ 22. Dr. Nguyen called for Hodges to receive treatment three times a week for four to six weeks, after which he would receive treatment once or twice per week for one month. See id. ¶ 24. Dr. Nguyen stated that it was "necessary" for Hodges to "work intermittently or a less than full schedule for approximately three months," and that Hodges could not perform work that required prolonged sitting. See id. ¶¶ 23, 26. Dr. Nguyen also stated that it was "necessary" for Hodges to "be absent from work due to the distance and recovery time needed for treatment." See id. ¶ 27.

In an August 16 letter, King denied Hodges's request for leave without pay. Id. ¶ 28. King instead offered the following accommodations: that Hodges should stand, stretch, and walk around to avoid prolonged sitting, and that he would not be required to lift objects weighing more than five pounds. See id. ¶ 29. King also advised Hodges that he was being placed on absent without leave (AWOL) status effective August 16, as he was able to work but failed to report for duty. See id. ¶¶ 30-31.

Nine days later, on August 25, 2010, Inspector General Willoughby notified Hodges that he was being terminated as Supervisory Auditor, effective September 10, 2010. See id. ¶¶ 36-37. Willoughby specified that the termination occurred for disciplinary reasons, "specifically because Mr. Hodges had been absent without leave since August 16, 2010." See id. ¶ 37.

After filing a discrimination complaint with the District of Columbia Office of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission, Hodges filed suit against the District in the Superior Court of the District of

3

Columbia, alleging violations of the ADA, the DCHRA, and the FMLA. See id. ¶¶ 2, 38. The District removed the case to this Court pursuant to 28 U.S.C. § 1441(a). See Notice of Removal [Docket Entry 1] ¶ 2 (Oct. 11, 2012).

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

"[I]n passing on a motion to dismiss . . . the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113

4

(D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotations marks omitted).

When, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court." Flynn v. Tiede-Zoeller, Inc., 412 F. Supp. 2d 46, 50 (D.D.C. 2006).

Here, the District has moved for summary judgment on Hodges's DCHRA claims for unliquidated damages, and it has provided an affidavit in support of its motion. See Aff. of Tamonica Heard [Docket Entry 5-1] (Nov. 30, 2012). Accordingly, the Court will treat the District's motion as it relates to these claims as one for summary judgment.

Summary judgment is appropriate where the pleadings and evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party may successfully support its motion by identifying those portions of the record, including

"affidavits or declarations," which it believes demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); see also Celotex, 477 U.S. at 323. Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252.

## DISCUSSION

### I. The District's Motion to Dismiss

#### A. Hodges's ADA and DCHRA Claims

Hodges alleges that the District violated the ADA and the DCHRA by failing to make a reasonable accommodation for his disability and by discriminating against him on the basis of that disability. See Compl. at 7-14. In analyzing the sufficiency of Hodges's DCHRA claims, the Court will apply the standards applicable to claims brought under the ADA. See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP, 611 F.3d 1, 5-6 (D.C. Cir. 2010); Chang v. Inst. for Pub.-Private P'ships, Inc., 846 A.2d 318, 324 (D.C. 2004) ("Because the DCHRA definition of 'disability' closely resembles the definition of disability found in the [ADA] . . . we have considered decisions construing the ADA as persuasive in our decisions construing comparable sections of the DCHRA." (alterations, citation, and internal quotation marks omitted)).

The ADA prohibits discrimination in the workplace "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "Disability" is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Id. § 12102(1).

6

Before 2008, the Supreme Court had narrowly interpreted what constituted a "disability." See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195-98 (2002); Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-83 (1999). The Court had held that the term "substantially limits" was to be "interpreted strictly to create a demanding standard for qualifying as disabled," and that an impairment had to "prevent[] or severely restrict[] the individual" from engaging in a major life activity. See Toyota, 534 U.S. at 197-98. The Court had also stated that an impairment had to be "permanent or long term." See id. at 198.

Congress responded by passing the ADA Amendments Act of 2008 ("ADAAA") in order to "reinstat[e] a broad scope of protection" under the ADA and "reject" the narrow interpretations set forth in Sutton and Toyota. See Pub. L. No. 110-325, § 2(b), 122 Stat. 3553, 3554. As amended, the ADA explicitly states that the definition of "disability" "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). New regulations issued pursuant to the ADAAA similarly provide that the term "substantially limits" is "not meant to be a demanding standard" and "shall be construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i). Indeed, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Id. § 1630.2(j)(1)(ii). And "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting" for purposes of establishing a disability under the ADA. See id. § 1630.2(j)(1)(ix). The impairment need only "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." Id. § 1630.2(j)(1)(ii).

Hodges asserts two types of claims under the ADA and the DCHRA: a failure to accommodate claim and a discrimination claim. To state a claim for failure to accommodate, a plaintiff must allege facts sufficient to show that (1) he had a disability within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of the position with reasonable accommodation; and (4) his employer refused to make such accommodation. See Gordon v. District of Columbia, 480 F. Supp. 2d 112, 115 (D.D.C. 2007). To state a disability discrimination claim, a plaintiff must allege facts sufficient to show that (1) he had a disability within the meaning of the ADA; (2) he was qualified for the position with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. See Duncan v. Wash. Metro. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001) (en banc).

The District argues that Hodges has failed to state any claim under the ADA or the DCHRA because he cannot show that he had a "disability" within the meaning of the ADA. The District's argument rests on the fact that Hodges's condition was "short-term" or "temporary" and therefore, according to the District, not "substantially limiting." See Def.'s Mot. at 8, 10 ("Plaintiff alleges that his condition was expected to be at its wors[t] for six to eight weeks but the remnants of the condition could remain for up to three to six months."). In so arguing, however, the District relies on pre-ADAAA caselaw and regulations. Before the 2008 amendments to the ADA, courts had found that impairments lasting less than one year were not "substantially limiting." See, e.g., Etheridge v. FedChoice Fed. Credit Union, 789 F. Supp. 2d 27, 36 (D.D.C. 2011);[2] Duncan v. Harvey,

---

[2] In its reply, the District asserts that Etheridge is a "post 2008 amendment case." See Def.'s Reply to Pl.'s Opp'n [Docket Entry 14] at 2 (Mar. 8, 2013) ("Def.'s Reply"). But

8

479 F. Supp. 2d 125, 131 (D.D.C. 2007) ("Courts are seemingly unanimous in the view that impairments whose effects last less than one year are insufficient to demonstrate a substantial limitation on a major life activity."). And pre-amendment regulations indicated that a temporary impairment might not be substantially limiting. See Toyota, 534 U.S. at 196 (citing 29 C.F.R. § 1630.2(j)(2) (2001)); Def.'s Mot. at 9. But in passing the ADAAA, Congress rejected restrictive judicial interpretations of the term "substantially limits," see ADAAA § 2(b), and the post-amendment regulations make clear that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ix).

Because the conduct alleged in Hodges's complaint occurred in 2010, the ADAAA and the new regulations apply. See ADAAA § 8. Hence, the fact that Hodges's impairment was expected to be temporary is not a bar to his ADA or DCHRA claims. Hodges alleges that he had "a disc herniation, a disc osteophyte with facet degenerative changes, and a lumbar disc bulge," and that all of these were "physical impairments that substantially limited his ability to sit, work and/or to engage in other major life activities." Compl. ¶ 41. He further alleges that his impairment "substantially limited his ability to sit for prolonged time periods and substantially limited [him] in other major life activities, such as, but not limited to, work, sleeping, walking, and concentration." Id. ¶ 42. Aside from its attempt to argue that a temporary condition cannot be substantially limiting, the District has not offered any reasons why Hodges's condition did not constitute a "disability" within the meaning of the ADA. See 42 U.S.C. § 12102(1)

---

while the case was decided in 2011, the conduct at issue took place before the effective date of the ADAAA, and hence the pre-amendment definition of "disability" applied. See Etheridge, 789 F. Supp. 2d at 35 n.12.

9

(defining disability); see also id. § 12102(2)(A) (listing sleeping, walking, concentrating, and working as major life activities). Taking Hodges's allegations as true, and giving the term "substantially limits" a broad construction, see 29 C.F.R. § 1630.2(j)(1)(i), the Court concludes that Hodges has pled factual matter sufficient to show that he had a "disability" within the meaning of the ADA.

The District's only other argument for dismissal relates to Hodges's failure to accommodate claims. The District appears to contend that, because OIG offered to allow Hodges "to take breaks to stand up, stretch and walk around and avoid lifting anything over five pounds," Hodges cannot show that OIG refused to make a reasonable accommodation, as is required to state a failure to accommodate claim. See Def.'s Mot. at 10-11; see also Gordon, 480 F. Supp. 2d 115. But not every accommodation will be a reasonable accommodation. Hodges has alleged that the District "failed to provide [him] with a reasonable accommodation" and asserts that the accommodation offered to him was "ineffectual on its face." See Compl. ¶¶ 44, 46 (indicating that reasonable accommodations would include modified work schedule and/or telecommuting); Pl.'s Opp'n at 37; see also 42 U.S.C. § 12111(9)(B) ("reasonable accommodation" may include "job restructuring, part-time or modified work schedules . . . and other similar accommodations"). In short, the parties dispute the reasonableness of the accommodation offered by the District—an issue that is not appropriately decided on a motion to dismiss. See Di Lella v. Univ. of D.C. David A. Clarke Sch. of Law, 570 F. Supp. 2d 1, 8 (D.D.C. 2008).

As the District does not contest the sufficiency of Hodges's ADA or DCHRA claims on any other grounds, its motion to dismiss these claims will be denied.

B.  Hodges's FMLA Claims

Hodges also alleges that the District violated his rights under the FMLA. The FMLA provides an eligible employee twelve weeks of unpaid leave during any twelve-month period if a "serious health condition" prevents the employee from performing the functions of his or her job. 29 U.S.C. § 2612(a)(1)(D). The statute prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]," and from "discharg[ing] or in any other manner discriminat[ing] against any individual" for engaging in activity protected by the FMLA. See id. § 2615(a)(1)-(2); Roseboro v. Billington, 606 F. Supp. 2d 104, 107-08 (D.D.C. 2009). Hodges asserts that the District is liable under theories of interference and retaliation.

To state an FMLA interference claim, a plaintiff must allege facts sufficient to show, among other things, that (1) he was entitled to take leave because he had a "serious health condition," (2) he gave his employer adequate notice of his intention to take leave, and (3) his employer denied or otherwise interfered with his right to take leave. See Deloatch v. Harris Teeter, Inc., 797 F. Supp. 2d 48, 64-65 (D.D.C. 2011).

The District argues that Hodges's interference claim should be dismissed because Hodges "did not have a 'serious health condition'" that entitled him to take leave. See Def.'s Mot. at 12. For purposes of the FMLA, a "serious health condition" is one that involves "inpatient care" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11); 29 C.F.R. § 825.113(a). The requirement that a condition involve "continuing treatment" can be met by a showing of, among other things, "[i]ncapacity and treatment," "[c]hronic conditions," or "[c]onditions requiring multiple treatments."

11

29 C.F.R. § 825.115(a), (c), (e). Incapacity and treatment qualifies if there is a period of incapacity of more than three consecutive days and subsequent treatment or a subsequent period of incapacity. Id. § 825.115(a). Incapacity means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." Id. § 825.113(b). Subsequent treatment could involve:

> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

Id. § 825.115(a)(1)-(2).

The District contends that Hodges cannot make out an interference claim because he did not face "incapacity and treatment." Def.'s Mot. at 13 (asserting that Hodges "fails to allege facts sufficient to establish one day of incapacitation, let alone three").[3] Hodges responds that his condition did cause "incapacity and treatment" because "his doctor required a complete work restriction" from July 22 to July 27, 2010—a six-day period of incapacity—and because he was under doctor's orders to continue treatment three times a week for four to six weeks and one to two times per week for one month after that. See Compl. ¶¶ 13, 24; Pl.'s Opp'n at 20-21. In addition, Dr. Nguyen stated on Hodges's medical certification form that Hodges's condition involved "a 6-8 week incapacity duration" and that, as a result of his continuing treatment, Hodges would be "unable to

---

[3] The District also appears to argue that Hodges was not entitled to take FMLA leave because he did not require inpatient care. See Def.'s Mot. at 12-13. This argument is plainly refuted by the statute, which provides that a "serious health condition" is a condition that involves either inpatient care or continuing treatment. See 29 U.S.C. § 2611(11).

12

perform work that required prolonged sitting." Compl. ¶¶ 22, 26. Dr. Nguyen also stated that it was "necessary" for Hodges to work "intermittently or a less than full schedule" for about three months and for Hodges "to be absent from work due to the distance and recovery time needed for treatment." Id. ¶¶ 23, 27.

Taking as true the allegations in the complaint and drawing all inferences favorable to Hodges, the Court concludes that he has sufficiently pled that he suffered from a "serious health condition" as defined by the FMLA. Specifically, Hodges has alleged enough to show "incapacity and treatment" – he was incapacitated for a period of more than three consecutive days beginning July 22, 2010 and underwent treatment at least twice in the thirty days after that date. See 29 C.F.R. §§ 825.113(b), 825.115(a); Compl. ¶¶ 13, 17, 22, 24.[4] And from Dr. Nguyen's statements it can be inferred that Hodges's condition and continuing treatment rendered him unable to perform the functions of his job. See 29 U.S.C. § 2612(a)(1)(D). The District does not dispute the adequacy of Hodges's notice or otherwise challenge the sufficiency of Hodges's factual allegations supporting his interference claim. Nor does the District address Hodges's FMLA retaliation claim in its motion or reply. Accordingly, the District's motion to dismiss Hodges's FMLA claim will be denied.

## II.  The District's Motion for Summary Judgment

In the alternative, the District moves for summary judgment on Hodges's claims for unliquidated damages under the DCHRA. Under D.C. Code § 12-309, a plaintiff may

---

[4] Hodges also argues that his back impairment was a "[c]hronic condition[]" or a "[c]ondition[] requiring multiple treatments," two alternative bases for finding "continuing treatment." See 29 C.F.R. § 825.115(c), (e); Pl.'s Opp'n at 21-24. Because the Court finds that Hodges has sufficiently stated an interference claim based on his "incapacity and treatment," it need not address the alternative ways in which "continuing treatment" might be shown.

13

only assert claims against the District for unliquidated damages if he has provided written notice to the Mayor of his alleged injury or damage within six months after sustaining the injury or damage. See D.C. Code § 12-309. Here, Hodges concedes that he did not provide the required six-month notice. See Pl.'s Opp'n at 40. Hence, his claims for unliquidated damages under the DCHRA are barred. See Blocker-Burnette v. District of Columbia, 730 F. Supp. 2d 200, 203 (D.D.C. 2010) (citing Owens v. District of Columbia, 993 A.2d 1085, 1087-88 (D.C. 2010) (holding that § 12-309 applies to DCHRA claims)).

Hodges correctly argues, however, that his failure to provide notice does not affect his ability to recover liquidated damages or equitable relief. See Caudle v. District of Columbia, No. 08-205, 2008 WL 3523153, at *2 (D.D.C. Aug. 13, 2008); Pl.'s Opp'n at 41. "'A debt is liquidated if at the time it arose, it was an easily ascertainable sum certain.'" Minter v. District of Columbia, No. 10-516, 2012 WL 925715, at *8 (D.D.C. Mar. 19, 2012) (quoting District of Columbia v. Campbell, 580 A.2d 1295, 1300 (D.C. 1990)). Back pay awards are easily ascertainable and thus qualify as liquidated damages. Blocker-Burnette, 730 F. Supp. 2d at 204-05. Moreover, in employment discrimination cases, back pay awards are considered a form of equitable relief, which is not barred by § 12-309. See id. at 205. Attorney's fees also are not affected by § 12-309 because they "are not generally considered damages at all under District of Columbia law." Id. On the other hand, compensatory damages that are not easily ascertainable, such as emotional distress and pain and suffering, are unliquidated and hence are barred if the notice required by § 12-309 is not given. See Elzeneiny v. District of Columbia, 699 F. Supp. 2d 31, 35 (D.D.C. 2010).

In his complaint, Hodges seeks awards of front and back pay, compensatory damages for emotional distress and other losses, and attorney's fees and costs. See Compl. ¶¶ 69-71, 78-80. Pursuant to § 12-309, Hodges may not recover front pay, emotional distress damages, or any other unliquidated damages under the DCHRA. But to the extent that Hodges's DCHRA claims seek back pay, lost retirement benefits, attorney's fees, or any other liquidated damages or equitable relief, they may proceed.

## CONCLUSION

For these reasons, the Court will grant the District's motion for summary judgment as to Hodges's claims for unliquidated damages under the DCHRA. As to Hodges's remaining claims, the District's motion to dismiss will be denied. A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 12, 2013